Hey, please this honorable court and the attorney for the United States government. My name is Michael M. Esmar, Sr., and I represent the defendant, Appellant Gwendolyn Berry. The first issue I'd like to bring up to the court is the issue of the forfeiture. In this case, the district court violated Federal Rule of Criminal Procedure 32.2. Was there any prejudice? Yes, Your Honor. It's a violation of due process, which is constitutional. It also, may I point out, it's a little bit out of line in the argument, but the district court never gave notice of a forfeiture hearing. Well, you said you haven't given notice and we want a forfeiture hearing. The judge said we're having it right now. That's at the hearing, Your Honor. I know. That's not proper notice. Well, I mean, there'd been a great deal of preparation before then. That's my question. What was the prejudice? The prejudice was, Your Honor, under the rule, I'm entitled to a preliminary hearing as soon as possible after the guilty plea. The guilty plea was back in February. Where does it say you're entitled to a preliminary hearing? I know there's supposed to be a preliminary order, which then provides notice, and then there's a final hearing. Where do you see that you're entitled? So you're saying you get two hearings? You get the court is to have a hearing as soon, a preliminary hearing as soon as practical after the guilty plea, and then it's the end of a preliminary order, to which I have a chance to object. Rule 32.2, as soon as practical after a verdict or finding of guilty, the court must determine what property is subject to forfeiture under the applicable statute. All right, I never knew that required a hearing. You've had cases where there's two forfeiture hearings? Yes, Your Honor. That's common? Sand jars, one of them, that this court has written on. Yeah, that's my, okay. But be it as of May, Your Honor, the record shows that on May 18, 2018, the original PSR came out. On June 5, 2018, there was a notice of a trial setting of, I'm sorry, sentencing for August the 2nd. On June 15, 2018, the first time the final PSR was due. It was not given then. However, it's not until July 6, 2018, that defendant's objections are filed. So, defendant's objections are filed before the government files a motion for forfeiture. The government, and remember, the trial is set for, I mean, the sentencing is set for August the 2nd. The government on July the 31st, 2018, finally files its request for forfeiture, which is at that point only three days before the hearing. Now, I did file a motion for continuance. That one was granted until August the 23rd, when the actual sentencing occurred. In the meantime, since the forfeiture was filed, I filed a motion for continuance. I filed a request for preliminary hearing, and I objected to the forfeiture. All of those are due process rights of the defendant, and especially the right to view the preliminary order forfeiture so that the defendant can object in a timely and proper manner. That is a due process right. It's substantive. It's not harmless error. And I will point out, I believe— So what would you have done different if you had better notice and more hearings or whatever other procedure? Well, I could have subpoenaed people, for instance, the people from next, Ty Williams. I mean, Ty Williams is the forgotten man in this case. When we talk about— But you knew that—I mean, you knew it was going to be addressed at sentencing, right? No. I knew because I had a motion for continuance. Well, you thought the sentencing was going to get continued. No, I had a motion to continue because of the—we didn't get a preliminary order, hearing, or any of that, and it wasn't ruled on until sentencing. So the judge starts off by saying your motion for continuance and to move the sentencing is denied. That's the first—that is the first time that I—and then I say, Judge, I'm entitled to a hearing, and the judge says you're getting one right now. That's a violation of the due process. It's even under the Sixth Amendment a violation of effective assistance of counsel. Well, I don't—I don't recall from the transcript of the sentencing, at that point, did you say, well, Your Honor, I want to call Ty Williams as a witness then? I did not list anybody, Your Honor, because until that moment, I didn't know there was even going to be a hearing over it. But if I may, Your Honor— It's really—it's not your—it's not the typical practice that forfeiture is dealt with at sentencing. I mean, we've had a lot of cases against—with each other. That—I mean, you think it's not the typical situation of forfeiture as part of the sentencing? Every time I've asked for a preliminary hearing before, it has been granted. And, yes, forfeiture is finalized. And what I wanted to point out to the court is I believe that all the cases that have come before this court before were on plain error. This is the first case before the court over a violation of 32.2, which is mandatory, with clear objections. In one of the cases, the reason that the court—not the Fifth Circuit, but another court said, no, it's not a violation of due process and it's harmless error, was because the individual had agreed to the dollar amount at his plea, and there was a continuance granted when the individual's attorney said, Your Honor, I didn't have proper notice of this forfeiture. And so they continued it. So it was held to be harmless error. And so I believe this is a fresh area for the court. But when you ask, was there harm to the client, the violation— the constitutional violation on a mandatory federal rule of criminal procedure by itself creates harm to the client. And I do believe that there—if I hadn't noticed, there were people I could have called. Well, the restitution amount and the forfeiture amount, as I recall, were the same. Yes, Your Honor. And so why would the proof or why would the arguments that you made about restitution at sentencing, why wouldn't that apply equally to a forfeiture? Well, one of the reasons, for instance, is as to the restitution, I put in hundreds of pages that showed that not all the amounts that the government said by the agent were attributable as theft. The first thing the agent has to determine is this theft or not. Well, for instance, there's $67,000 worth of charity. Even at the sentencing, I'm standing there with a piece of paper in my hand that clearly shows the Davises were aware of these charities. In fact, it came out of the Tithe account, which was set up to give money to the charities. And there's a letter back to them saying thank you very much, and this is her church. So they knew that she was donating to her own church, and the court said, well, that's just one of many, which is the reason I did not object to or bring appeal the dollar amount for loss, because it's got a different standard than the amount for restitution. The restitution, the government is under a burden to prove every dollar that it claims. There was no victim's statement in this case, which would have clarified a lot of the speculation, but there was none. All that was done on restitution, that's one of my complaints, is that the manner that the court chose was to allow special agents to look at the accounts. They first decide if it's theft or not, then they decide how much of it was theft, and then they attribute it to Gwendolyn Berry, which is an assumption upon an assumption, and is unsupported in the record by the acknowledgment of the victim that that's a correct amount. So we also argue, though, that the forfeiture is wrong because it failed to follow the mandates of 18 U.S.C., Section 3572 in U.S. v. Bagginian. It's interesting. We talked about Sanjar a moment ago. In Sanjar, the ruling was that forfeiture and restitution are separate and that the government gets both. The issue of 3572 did not come up. My client had no money at all and was 85 years old. But in this particular case, what they're fighting over, and there's a garnishment issue coming up before this court that involves a million dollars, well, that's the last of it. If it goes to forfeiture, then there's no ability to pay restitution to the victim. And so that issue was raised below but not determined by the court. He denied it. The government came forward, and unlike Sanjar, it said, we promise that we'll give the money to the victims and not to the government. Well, that's not insufficient because these are Assistant U.S. Attorneys at the district court level, and this will be determined up at Justice and Treasury. And so because of Sanjar, I don't believe it's sufficient. I believe that the forfeiture was impermissible because all her money was shown by affidavits was going towards or all her potential money was going towards the restitution. So, and then last. I'm sorry. Verify this for me, please, or dispute it, that when your client pled guilty on 5 February 2018, she agreed with the factual basis but disputed the loss, forfeiture, and restitution amounts, which she agreed would be taken up at sentencing. Is that part of the plea agreement? She did. The court, the magistrate said, ma'am, you understand we're not going into that issue here. It will be taken up at sentencing. And she said yes. But I still have to have sufficient notice of sentencing, forfeiture. You were given six weeks or so after you got your continuance of the sentencing. The sentencing was continued for six weeks or so. No, it was continued from August the 2nd to August the 25th. Okay, three weeks for the resolution of forfeiture and restitution. Setting aside restitution, I immediately objected that there was insufficient time in a move for continuance. I immediately objected and immediately asked for a preliminary hearing. I did everything I possibly could to try to comply with Rule 32.2. So the last point on forfeiture, and my brief concedes that NEDJN controls, but it's whether or not you can have a money judgment going after untainted funds. And the argument is that the U.S. codes only provide for criminal forfeiture of property constituting or derived from the proceeds of the offense. And the government in this case was going after untainted funds. And we did deliver to the government her retirement funds and the account in which she had placed the Social Security funds to that date. Both of those have gone to the government. The fight that's coming up is they also went after Michael Berry's, her husband's, retirement fund. And that's in a separate appeal. And the briefs have just been finished on that. It's not set for anything yet. But that's a separate argument. On the position of trust, Your Honor, we do stand on U.S. v. Oleson, U.S. v. Tan, and U.S. v. Vinlay. We also point out the United States v. Douglas and the United States v. Huggins. Under those cases, the issue is in Miller, and I believe Judge Stewart was in Miller, they used a primary trait test. And I don't believe that's a proper test. I believe that fiduciary-like relationship. Position of trust should be for people like lawyers, accountants, CPAs, doctors. My lady was a bookkeeper. No matter how they address it, they always come back and say she was a bookkeeper. So the court has to decide whether to follow Oleson or follow the unpublished opinions, which have come down since then. Wouldn't you agree, and maybe you don't, that she—I know this isn't the test, but wouldn't you agree that a great deal of trust was placed in her with the various items she was given and the discretion she was given? So I trust— That's not typically what you do with a bookkeeper. I trust my housekeeper, my person that's living in my house. I go away for a month. I come back. He was unsupervised. I trusted him or her explicitly. Everything in my house is stolen. That is not a position of trust. That's totally opposite. That's not even close to the example I gave you. Well, let's take Quicken. The government argues Quicken. And the problem with Quicken is that in Tann, every bookkeeper has Quicken, and it's just part of the usual scheme in a bookkeeper theft case. They're going to rely on Quicken. They're going to change the picture. And in this case, the argument as to position of trust and position of sophisticated means is much the same by the government. But in this case, the funds go directly to her. For instance, sophisticated means, this is an unusual case in that the victims themselves are suing other people saying this scheme was so unsophisticated that a monkey could have figured it out, that a moron could have figured it out, that their lawyers, their CPAs, their accountants were all negligent because of the scheme. And the government itself says we can trust these agents tracing because the trace was easy. If it went to her, we counted it against her. So if it's that easy to trace, then it's not a sophisticated thing. But in regards to sophisticated, oh, one last thing over that. In Delgado, we didn't talk about the second part of position of trust. The significant facilitation standard asked the court to consider whether the defendant occupied a superior position. She does not. She, she, Ty Williams represented the superior position. Finish your sentence, will you? Yes, Your Honor. Ty Williams was the superior. So in Delgado, they found that the court did not deal with superior position and therefore sent it back for resentencing. All right. Thank you, sir. You've reserved your rebuttal. All right. Let's hear from the government. May I please the court? Anna Caluri on behalf of the United States. I'll pick up where we left off with the two enhancements. I think this case is more, most like Miller, which is a case from 2018 from this court.  She was responsible for issuing checks to various vendors for payment every week by 80 to 100. She had the discretion to add new vendors to the payroll, and she took those checks, and she took them to the bank for authorization to administer those checks. What she did was she added her boyfriend as an accounts payable and created him as a vendor. She started issuing fraudulent checks to him, took those checks, presented it to the bank. They authorized them, the checks issued, and then she covered her tracks because she had him in the database with other legitimate vendors, so it was difficult to detect. I think you have something similar here where you have Barry, who has used funds to pay herself, well, her expenses, let's say, with her American Express card and her various other cards, her husband's expenses, her children's expenses, various charities that she was affiliated with, and she mixed those payments in with legitimate business expenses over a series of at least six years when she issued them. She had the authority to do so because she was responsible for paying all of the Davis's bills. She received all of the anything relating to billing and accounts at a P.O. box in Houston where the Davis's did not live. She was solely responsible for collecting those, paying those. She contacted the Davis's when she needed more funds. They relied on her advice as to where those funds should come from and what they should pay. She then created false entries in the Quicken accounts to cover what she was doing over those six years. This court found that both the abusive position of trust and the sophisticated means applied to that case. Should we be looking at the title, quote, unquote, bookkeeper, or more at the title and sort of the degree of reliance in the particular context? I mean, counsel often says, well, it should be a person with a fiduciary relationship, a lawyer, accountant, et cetera. You know, bookkeeper is not that. So if we were just going on titles, maybe. Does the context here make a difference? You don't look at the title. The title, I think perhaps you could look at that here. She was the vice president. But I think you looked at what she does. And, for example, with the abuse of the position of trust, you have to prove two things, one, the position of trust, and, two, that she used that position of trust to either facilitate the commission of the offense or to cover it up. And here I think you have both. You don't necessarily need the title of vice president. For example, in Miller, there's no indication that she had a fancy title or anything like that. She just worked in accounts payable and had the discretion and was loosely supervised as she collected and issued these checks. Was there any periodic meeting between her and the Davises? Or, you know, once this got started, it pretty much was like just a carte blanche, you know, set up? It seems pretty carte blanche. I mean, we know through all of the documents that are submitted when they were calculating the loss that there was a number of communications via e-mail and telephone. In the beginning, it was with her supervisor as well, Ty Williams, before the Davises separated from Ty Williams. There was some oversight that way. But for the most part, she had discretion. And we know that because this continued for six years without detection. She covered up what she was doing by these false entries in the Quicken software. And those every year were sent or actually more often than not were sent to the accountant to look over to make sure that the taxes were being prepared appropriately and any sort of deductions for charitable giving could be taken out. Moving on to forfeiture, unless there's questions about the enhancement. The timeline here, so there is no due process violation here. The court did what the court could here. The loss amount, the restitution amount, the forfeiture amount are all the same. It was completely appropriate for this to be decided at sentencing. The defendant had notice in the indictment that there would be forfeiture. And then the PSR, she pled guilty on February 5th. The PSR was filed on May 18th. The final order didn't come in until August 23rd. In between that, you see a number of docket entries and a number of filings with a lot of affidavits, documentation, spreadsheets justifying the loss amount. As defense counsel conceded below, the loss amount, the restitution, the forfeiture, they're all the same. So, again, it was appropriate for the court to deal with this all at once at the sentencing hearing. The defendant hasn't made any showing that there was any prejudice. The arguments that were put forward in the various- As you would have called Kyle Williams as a witness. I believe that is a new assertion here. I don't believe that's anywhere in the briefing or below. The arguments that were made below were that the charitable donation shouldn't have been included, Ms. Berry's wages were included in the loss amount, and that the business expenses were included in those as well. And the government, through their filings, stated that none of these were included in the loss amount and asked the defendant to show where this would be. There were filings. I believe there were about 300 pages of documents the defendant filed before the district court. The court considered it, found that it was-considered it and essentially rejected it in terms of reducing the loss amount and agreed that the government had shown and proved up the loss amount, forfeiture amount, and restitution amount based on the affidavits and various other documents. There's no requirement of a preliminary forfeiture order under the rule? There-so as soon as practical- Right. So first you've got the notice of forfeiture, right? Then you have the preliminary order, and the government filed the notice of the preliminary order. Was it ever entered? Did the district court ever enter a preliminary order before? I looked, and I don't see that. I didn't either. You said there was no procedural violation. To the extent that that is a procedural violation, it doesn't rise to a due process error, given all of the notice and all of the documents going back and forth. This was obviously a live issue that was litigated extensively before the district court. Both parties participated with all of their filings, and the judge considered what the defendant's arguments were, considered all of the documents, and when asked, when the defendant asked for a hearing, he said, we're having a hearing now. And it's true. The court went through everything and considered everything, and then prior to entering the final notice of forfeiture. What about his argument under Section 3572? It's an interesting argument because that provision usually courts rely on that to say, I'm not going to impose a fine because I've ordered all this restitution, and that needs to be the priority, not a fine to the government. He says, though, that it says, shall impose a fine or other monetary penalty. So why isn't money judgment forfeiture order and a other monetary penalty within that statute? I agree it is an interesting argument. I haven't — I've looked and looked, and there's no case law on this. Typically, you're right. The courts say I'm not going to impose a fine, which is what happened here. So we didn't have a fine imposed, but there was a — the forfeiture and the restitution was imposed. And that is proper. This court has held over and over, all of the other circuits have held over and over, that the imposition of both of those is proper and doesn't violate this. Like I said, no one's addressed whether this statute is a problem. Correct. And it says, or other money penalty. I think if you look at it, it is dealing with the fine provision. And while that — it says, shall impose a fine or any other money — monetary penalty, given its position in the statute and what the statute is there to address, it really is fines in the classic sense, and it isn't meant to encompass forfeiture, is my reading of that, given its position and the rest of the language around that. And I think that's why this hasn't come up before. But you don't see case law either way addressing this? No, I don't. And I think it's important to note that the district court can properly impose the forfeiture and the restitution, and I know that they're both the same amounts. And under the MVRA, the victims of the crime are supposed to be paid first, and so there are ways afterwards for any money that is received through the forfeiture to be turned over and applied to the restitution amount to make the victims whole first, because victims are supposed to be made whole first before the government receives any sort of reimbursement that way. You said that was just an AUSA, and they don't get to really decide where the money ends up going. Is there a DOJ policy on victims having priority? I believe it's in the MVRA, and I think as officers of the court, when we represent that to the district court, it should be treated as this is what's going to happen. And that is exactly — we know the district court was very concerned about the victims being made whole and, in fact, was displeased that restitution hadn't even started being paid yet in this case, despite the fact that the defendant had pled guilty to these crimes and presumably restitution would be imposed. So we know that was a core concern of the district court, and the government attorney did address that and said both of these need to be imposed. And I think the other thing, too, about the forfeiture that's interesting is once we have a money judgment order, it allows the government to prevent the defendant from selling assets and dispersing things. So it's another way to be able to stop funds from going other places, to be able to recoup it, and to try and make the victims whole again. It's just another tool that we can use. So the imposition of both, they serve different purposes, but they do work together to primarily make the victim whole first. Circling back a little bit to loss amount, forfeiture, restitution, all the same, et cetera, as I recall, the government filed a great amount of papers supporting these losses, and the defendant filed objections. Were there 85 pages of objections filed by the defendant before sentencing? There was, I believe it was a 65-page objection and about 300 pages of documents, yes. There was a number of filings, and there were three affidavits by various government agents who had investigated this, who looked over it and came up with summaries. They're affidavits of what it was. There is a spreadsheet that has 576 entries of the fraudulent actions that the defendant took, and that's how essentially we came up with the amount here, which I believe is, quite frankly, under what the actual harm is that her crimes committed to the victims. Unless there are any other questions, I'll rest on my brief. Thank you. Thank you. Mr. Esmeyer for both. Before going back to the forfeiture hearing and whether or not there was a ---- Just a minute before you do that, is this correct that you're bringing up for the first time at oral argument that you would have called Ty Williams as a witness? Yes, that is correct. However, it is also correct that I did say that next, the next financial corporation, Inc., was where the restitution should go, and there was an issue over, even if the court's amount of restitution was correct, there's an issue as to who should get those funds. Why does your client have standing to litigate who gets the money? If it's clear your client owes the money, why does she care who gets it? Because of double recovery. It's unfair. It's one thing to go get the money from the culprit, but it's unfair for them to take a double recovery, and my client just wants to make sure that the people who get it are the same people who spend it. In other words, since next paid, but next isn't the only one, and not to tell us how much the other people settled for. The banks has settled. We don't know the amount. Others are still being litigated for the same dollar amounts as my client was ordered to pay restitution and forfeiture on.  It just seems messy, though, because the lawsuit next also paid. There were other allegations, not just the failure to stop your client. Weren't there other allegations that next had all kinds of problems managing the Davises' money? And with Ty Williams. Yes, Your Honor. But I could have had next at the hearing because they would have explained the settlement and why they paid the settlement. But if I may, on sophisticated means, there's an issue as to whether or not the methodology followed the sentencing guidelines. The court followed the 2014 sentencing guidelines, which were amended in 2015. The sentencing occurred in 2018. And so the court did not use the proper guideline year for that, is our argument. What separates this case immediately from the multitude of non-published sophisticated means cases cited by the government is that the Davises are suing their accountants, attorneys, and CPAs for being negligent in that any one of them could have, should have, discovered the criminal activity easily. As this court says in Olison, it's just blind luck that it went on so long and created such a large amount of money. Thank you for your time. Thank you, Mr. Osper.